**Harry LEWIS, Appellant,**

v.

**Henry CURTIS, Albert F. Duval, Roger S. Ahlbrandt, Fred Herbolzheimer, Jr., Bernard S. Kubale, William G. Kuhns, Louis H. Roddis, Jr., Charles M. Williams, and Hammermill Paper Company, Appellees.**

**No. 81–2055.**

United States Court of Appeals, Third Circuit.

Argued Jan. 21, 1982.

Decided March 3, 1982.

---

Michael P. Malakoff (argued), Richard A. Finberg, Berger, Kapetan, Malakoff & Meyers, P. C., Pittsburgh, Pa., Abraham I. Markowitz, New York City, for appellant.

J. Tomlinson Fort (argued), Michael J. Betts, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellees Curtis, Duval, Ahlbrandt, Herbolzheimer, Kubale, Kuhns, Roddis, Williams.

John M. Wolford, MacDonald, Illig, Jones & Britton, Erie, Pa., William P. Frank, Robert E. Zimet, Skadden, Arps, Slate, Meagher & Flom, New York City, for appellee Hammermill.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiff Harry Lewis appeals from a final order of the district court dismissing his complaint and denying his motion for leave to amend. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

It is undisputed that, in 1980, Carl C. Icahn sought by a proxy contest to obtain a seat on the board of directors of Hammermill Paper Company, a Pennsylvania corporation. Icahn abandoned his contest on July 29 after entering into a settlement agreement with Hammermill ending all the pending litigation between them; Hammermill agreed to pay Icahn $750,000 to cover his expenses in the proxy contest. On July 30, *The Wall Street Journal*, in a concise, two-column article, reported the settlement between Hammermill and Icahn. On August 1, Lewis verified the complaint in the present action, charging that the directors had violated their fiduciary duty to Hammermill because the payment to Icahn was a "waste and spoliation of Hammermill's assets" and demanding that the individual defendants be required to pay to Hammermill $750,000 for the damages sustained by it. The complaint was filed on August 4.

In December 1980, counsel for defendants deposed Lewis. Lewis testified that he read about the settlement agreement in *The Wall Street Journal* on July 30. He then called his attorney, Abraham Markowitz, and left the investigation of this matter entirely to him. Later during the deposition, however, Lewis testified that he verified the complaint only after Markowitz apprised him of the results of the investigation. Counsel for Hammermill asked questions concerning the facts upon which Lew-

is based his verification and, in each case, Markowitz instructed Lewis not to answer on the ground of the attorney-work-product protection. For example, the original complaint states that the president of Hammermill completely dominates the selection process of the board of directors. When asked the basis for verifying this allegation, Lewis testified only that he made the allegation upon "information given to me by my attorney" and, on Markowitz' advice, refused to disclose that information. At the deposition of Markowitz, he, too, refused to describe any facts developed in the course of investigation.

Defendants filed various motions, including a motion to dismiss the complaint on the ground that it failed to comply with rule 23.1 of the Federal Rules of Civil Procedure because: (1) the complaint failed to state with particularity the efforts, if any, Lewis made to require that the $750,000 be repaid to Hammermill, and the reasons for failing to obtain such action or for not making the effort; (2) Lewis does not fairly and adequately represent the interests of the Hammermill shareholders; and (3) Lewis' failure to investigate personally the underlying facts makes his verification of the complaint a sham. With these motions before it, the district court stayed all proceedings and ordered a preliminary hearing. Before the preliminary hearing, Lewis filed a motion to amend his complaint. The amended complaint attempts to set forth additional grounds why it would have been futile to request the board of directors to correct the alleged wrong in this case.

At the hearing, Lewis' local counsel, Michael Malakoff, asked: "Your Honor, may we have an offer of proof as to the purpose of this unusual proceeding?" The district court replied:

This is a court proceeding to see whether rule 23 has been [complied with] by counsel in this case.... I want to see what the facts of the situation were at the time it was drawn and when the information came to him and all that sort of thing and what was imparted to him. Fact, now. I'm not talking about any question here about privilege. So just sit down, will you?

Markowitz was called to the stand and examined by defendants' counsel. Markowitz accepted full responsibility for the investigation of the facts, but repeated the position he had taken at Lewis' deposition that he was not required to provide any information concerning his investigation. The district court did not consider the attorney-work-product protection applicable:

[O]n the face of this complaint and the way it was executed, lack of verification ..., it raises certainly a suspicion that the complaint may be just a strike complaint. It's subject to investigation by the Court, by me. I'm not going to let the thing go forward unless I'm satisfied that some investigation has been made.

The court subsequently asked Markowitz what documents he used to prepare the complaint.

The Court: What documents are you willing to submit, your file? You don't want to submit your file, do you?

Markowitz: That would be in violation of my refusal to answer.

Malakoff: May I ask the witness certain questions?

The Court: No. I'm examining him....

Markowitz: May I consult with Counsel, please, for just two minutes?

The Court: An experienced lawyer like you? Tell me the truth of the matter. Did you consult any document or didn't you?

Markowitz: I certainly did, your Honor.

The Court: Tell me what one.

Markowitz: The documents are all on that table.

The Court: Bring them up and hand them to me. One by one we will look at them. Do you want to bring them up?

Malakoff: May I consult with my client, your Honor?

The Court: What is this, a charade? This is a hearing here in the Federal Court. If you want to carry on that way, I'm willing to grant the motion to dismiss.

The district court then announced that he would give Lewis and Markowitz ten minutes to review their position and said: "If you're not prepared to relate to this Court your investigation with particularity as to what you found out and testify about it, we'll conclude the hearing."

After the recess, Malakoff indicated that Markowitz was prepared to identify each of the documents he reviewed and the persons he consulted from July 30 to August 1 in preparing the complaint: Markowitz produced his presuit investigatory file and testified that, between July 30 and August 1, 1980, he examined Icahn & Company's 13–D form, and amendments thereto, on file with the Securities and Exchange Commission; Hammermill's 10–K for 1979; the proxy statements of Icahn and Hammermill; the complaints filed in connection with the proxy contest; and the files of a similar case in which Lewis was involved. He would not, however, testify about "what investigation he made."

> The Court: If he [Markowitz] isn't going the full way, we might as well stop, too, because he can't make the rules here and you can't, what I'm to learn.
>
> Malakoff: I believe the Supreme Court has made the rules.
>
> The Court: Maybe you'd better go there. Maybe you will. You will have a chance, I think. I think you'll have a chance.
>
> Malakoff: I believe that he's committed to—
>
> The Court: Sit down, will you?

Markowitz also testified, however, that: "I did not make any investigation. I think the Wall Street Journal article itself, as far as I'm concerned, was sufficient basis for bringing a lawsuit."

> The Court: You based your judgment, then, on the Wall Street article?
>
> Markowitz: On forty years of experience, your Honor, please.
>
> The Court: You had a great suspicion, didn't you?
>
> Markowitz: I didn't have any suspicion.
>
> The Court: So you brought another strike suit, didn't you?

In view of Markowitz' refusal to explain the relevance of some of the documents, the district court refused to permit some of them to be admitted into evidence: "Then we'll not hear any more documents if he isn't going to respond by saying they influenced him. We'll not hear any more about useless documents in the record." The district court announced orally the same day that it intended to dismiss this action with prejudice.

## II.

Lewis makes two principal arguments in support of his contention that the district court's order is error: (1) the original complaint complied with the requirements of rule 23.1, and thus the district court should not have dismissed it; and (2) the district court erred in refusing to allow Lewis to file an amended complaint. Because it was error for the district court not to permit Lewis to file his amended complaint, we will not consider whether the original complaint complied with rule 23.1. We thus proceed to discuss the district court's refusal to permit amendment.

## A.

Rule 15(a) of the Federal Rules of Civil Procedure directs that leave to amend "shall be freely given when justice so requires." Whether to grant or to deny leave to amend, however, is within the discretion of the district court, and the district court's decision to deny leave to amend is thus subject to reversal only for abuse of that discretion. *See Cornell & Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978). In denying Lewis' motion to file an amended complaint, the district court stated: "[T]he amended complaint as submitted is conclusory and lacks particularity and demand and is not supported by any investigative facts whatsoever." Assuming that a court may deny leave to amend if the proposed complaint is legally insufficient on its face, the issue before us is whether the district court abused its discretion in failing to find that the amended complaint sufficiently meets the requirements of rule 23.1 and cures the defects, if any, in that complaint.

## B.

■ Defendants argue that Lewis' general, conclusory allegation that the directors participated in the transaction in question does not excuse demand under rule 23.1. Rule 23.1 expressly requires that a shareholder's derivative complaint allege either that a demand was made upon the directors to take the desired action or that reasons exist for failing to make such a demand. The demand requirement is based on the premise that a corporation's decision to enforce a right on its own behalf is a matter of business judgment within the domain of the board of directors. *See Cramer v. GT & E Corp.*, 582 F.2d 259, 274–75 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Landy v. FDIC*, 486 F.2d 139, 146 (3d Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Because of the important policies behind the rule, "the demand requirement of Rule 23.1 should be rigorously enforced . . . ." *Cramer*, 582 F.2d at 275.

The amended complaint states that Lewis made no demand and that demand would have been futile because all individual defendants were directors of Hammermill and had knowledge of, participated in, and approved the acts and transactions referred to in the complaint; therefore, the individual defendants would, in effect, be called upon to authorize a suit against themselves. The amended complaint alleges with particularity not only the approval by the directors of the payoff, but also alleges in detail a larger scheme by the directors to retain control of Hammermill. First, all of the individual defendants had been directors of Hammermill since 1976. Second, seven specified defendants, in concert with the other individual defendants, embarked upon a plan to frustrate and prevent any attempts to obtain control of Hammermill by third parties or to cause its merger or liquidation, to entrench themselves in their positions, and to control Hammermill. This plan to frustrate outside attempts to obtain control of Hammermill included: (a) long-term employment contracts for six of the directors in 1976; (b) an amendment to Hammermill's certificate of incorporation requiring the affirmative vote of 85% of the outstanding shares of stock for the authorization of any transaction with the owner of 20% or more of Hammermill stock; and (c) the adoption of an amendment of the By-Laws on March 31, 1980 reducing the number of directors from twelve to eight.

Third, Hammermill sued Icahn, alleging violations of the federal securities laws, the same day it reduced the board's size. Fourth, Icahn and defendant Duval had meetings of which all of the individual defendants knew or were advised. Finally, the settlement agreement was eventually approved by the board of directors. The amended complaint also contains detailed allegations concerning the financial interests of various directors, their status as executive officers of Hammermill, their tenure in office, and their control of the activity of Hammermill. In sum, it is clear that Lewis alleges that: (1) all of the board engaged in a self-interested act, *i.e.*, the "payoff" to retain control of Hammermill; (2) all of the board members are "interested" in the transaction; and (3) there were prior acts furthering their objective to frustrate outside attempts to obtain control of Hammermill. The issue before us is whether the district court abused its discretion in refusing to permit leave to amend because this amended complaint fails to allege with particularity reasons why demand was not necessary.

■ Whether Lewis has complied with the demand requirement of rule 23.1 involves solely an examination of the amended complaint. *See In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 & n.4 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Courts will excuse the derivative plaintiff from the demand requirement when his complaint alleges that a majority of the directors have participated in the underlying wrongdoing or that the board is controlled by the alleged wrongdoers. *See Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978); *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85, 88 (2d Cir. 1953). To

preserve the vitality of rule 23.1, however, courts have refused to excuse demand simply because a majority of the directors are named in the complaint and have cautioned that mere conclusory allegations of director wrongdoing will not suffice to excuse demand. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209–10 (9th Cir. 1980); *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir. 1977); *Kauffman*, 479 F.2d at 264.

Courts disagree about the level of the directors' involvement in the challenged transaction necessary to excuse demand. The majority view is that the mere approval of an allegedly injurious corporate transaction, absent self-interest or bias by a majority of the board, is insufficient to excuse demand. *See Greenspun*, 634 F.2d at 1210; *Heit*, 567 F.2d at 1162; *Kauffman*, 479 F.2d at 265. *But see Liboff v. Wolfson*, 437 F.2d 121, 122 (5th Cir. 1971) (per curiam). *See generally* Note, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U. Chi.L.Rev. 168, 176–77 (1976) (*Kauffman* represents the preferred view). Moreover, the cases are in agreement that the allegation that demand upon the directors would be futile because the directors "would be suing themselves" is not alone sufficient to excuse demand. *See Heit*, 567 F.2d at 1162; *Weiss v. Temporary Investment Fund, Inc.*, 516 F.Supp. 665, 672–73 (D.Del.1981); *Kusner v. First Pennsylvania Corp.*, 395 F.Supp. 276, 284–85 (E.D.Pa. 1975), *rev'd on other grounds*, 531 F.2d 1234 (3d Cir. 1976).

■■■ Control of the board by interested members, or participation by board members in a challenged transaction, may not be, in some circumstances, sufficient alone to make demand futile. A demand on the board should not be required, however, where the allegations of the complaint permit the inference by the court that the directors upon whom demand would be made lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued. Whether the board is sufficiently interested so that a court will not defer to its judgment to pursue the derivative suit is an issue that must be faced at some point. *See* Buxbaum, *Conflict-of-Interests Statutes and the Need for a Demand on Directors in Derivative Actions*, 68 Calif.L.Rev. 1122 (1980) (when the challenged conduct involves self-dealing, the demand-on-directors requirement is a species of demurrer). There is no reason why a court, in deciding whether a board is sufficiently interested to excuse demand, should not be informed by the same factors used to determine whether a court should defer to the board's decision not to pursue the action. The board will lack such disinterestedness if plaintiff's allegations, taken as true, would show that, under state law, a court should not defer to the board's decision not to pursue the lawsuit. *Cf. Burks v. Lasker*, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979) (whether a board is able to assert protection of the business judgment rule must be decided with reference to state law).[1] To require otherwise would force plaintiff to make a demand that, in many cases, would but delay suit and remedy.

Some courts have suggested that directors may not be sufficiently interested in a transaction to excuse demand, yet are interested enough to be unable to assert the protection of the business judgment rule. *See, e.g., Clark v. Lomas & Nettleton Financial Corp.*, 625 F.2d 49, 54 n.5 (5th Cir.), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1980); *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir. 1980); *Heit*, 567 F.2d at 1162 n.4. On the other hand, formulating different standards for the two issues is in fact difficult without adopting the rigorous demand requirement of the United States Court of Appeals for the First Circuit in *Heit*. In *Heit*, the court held that allegations of futility substantially similar to those in this case fail to satisfy

---

1. If plaintiff alleges a violation of federal law, *Burks* requires that the court must, after determining that state law requires deferral to a board's decision not to pursue the lawsuit, also determine "whether such a state rule [is] consistent with the policy" underlying federal law. 441 U.S. at 480, 99 S.Ct. at 1838.

the demand requirement of rule 23.1.[2] Making a demand was not excused in *Heit* because the sale of stock challenged was not alleged with particularity to be at a grossly inadequate price. Thus, the court stated that nothing more than erroneous business judgment was asserted. *Id.* at 1161–62. The court concluded that, in the absence of a showing that a majority of the board engaged in " 'a transaction completely undirected to a corporate purpose,' " demand on the directors was required. *Id.* at 1162.

We do not think that, to excuse demand, plaintiff must allege that the transaction could not under any circumstances ultimately be considered the product of business judgment. Rather, the court, in determining whether demand is necessary, should consider whether a demand on the directors would be likely to prod them to correct a wrong. With this as the focus, the interestedness of the directors in the transaction is more relevant to our inquiry than the character of the alleged wrong. To the extent that *Heit* requires that it be alleged that a majority of directors be involved in a facially improper transaction before demand will be excused, we decline to follow it. *See Untermeyer*, 580 F.2d at 24 ("[T]he distinction made in *Kauffman* and *Heit* between actions that could, prima facie, serve a legitimate corporate purpose and those that could not . . . was made for the purpose of determining whether a participating trustee was sufficiently unconnected, or 'disinterested,' to be presumptively responsive to demand . . . .").

Thus, we do not think that we should apply different standards of "interestedness" to cases in which plaintiff has made no demand and to those in which a demand has been made and rejected. In determining whether a court should defer to a board's decision not to initiate a suit against interested directors, it is necessary to determine whether the directors' decision is consistent with their fiduciary duty. *See Evans v. Diamond Alkali Co.*, 315 Pa. 335, 172 A. 678, 679 (1934). The business judgment rule protects directors from liability for honest mistakes of judgment, *see Selheimer v. Manganese Corp. of America*, 423 Pa. 563, 224 A.2d 634, 644 (1966), but it presupposes a decision that is honest, unbiased, and in compliance with fiduciary duties, *see Cramer*, 582 F.2d at 274; *Miller v. AT&T Co.*, 507 F.2d 759, 762 (3d Cir. 1974). Thus, to determine whether a decision not to sue the interested directors would be immunized from scrutiny, it is necessary to determine whether the directors who would make that decision were involved in the allegedly wrongful transaction.

Even if we were to concede that the case alleged here, "a waste and spoliation of the assets," is typically a difficult case to sustain, the mere desire to avoid a possibly futile, expensive proceeding should not lead courts to block its continuation through a demand-on-directors requirement. Taking plaintiff's allegations as true, the directors to be sued would control the response to any demand. In this situation, trial—or at least embarking on the road to trial—is required. To impose the bar of the demand requirement would largely be to create a pleading defense to a fact dispute. To prove his allegations, plaintiff here must still show that all of the directors are interested in the transaction and that the payment was "a waste and spoliation of the assets." Corporate directors should not, at the expense and inconvenience of an innocent corporation and its shareholders, be spared the trouble of responding to a complaint that states a cause of action, but may

---

**2.** The plaintiff in *Heit* alleged that demand upon the board of directors implicated in the transaction would be futile because of the following reasons:

No demand has been made by plaintiff upon the directors of B–A to institute and prosecute this action because all of said directors are named as defendants herein, and they have participated in, authorized and approved and are personally liable for the wrongs complained of in this action; and any demand upon them to [institute] such an action would have been futile and useless and that thereby said defendants would have been required to institute an action against themselves.

567 F.2d at 1159.

be deficient of proof. *See* Buxbaum, *supra,* at 1130.

■ The complaint here alleges that, not only did all the directors participate in and approve of the challenged activity, but the challenged activity is a self-interested transaction. It sets forth in detail a scheme, of which this transaction is alleged to be a part, furthering the directors' interest in perpetuating their control of Hammermill. When a complaint alleges, as this amended complaint does, that all the directors participated in and approved of a self-interested transaction, and sets forth in detail facts showing that the directors are indeed interested, any demand must be presumed futile. *Cf.* Note, *supra,* at 181–82 ("Participation by the directors in the challenged transaction absent self-interest or bias should not excuse [demand]."). *See also Vernars v. Young,* 539 F.2d 966, 968 (3d Cir. 1976) (finding demand necessary "where the allegations do not make charges against a majority of a Board"). Indeed, allegations similar to those in this case have been found as a matter of law to excuse demand under rule 23.1. *See Liboff,* 437 F.2d at 122. The district court's failure to permit Lewis to amend his complaint because it failed to advance with particularity reasons for not making a demand was thus an abuse of discretion.

### C.

■ The district court, in denying Lewis' motion to amend, also stated that the amended complaint "is not supported by any investigative facts whatsoever." The court dismissed the original complaint for the same reason. The directors argue that the verification requirement of rule 23.1 remains unsatisfied. The issue is whether the district court abused its discretion in finding that Lewis' original complaint failed to satisfy rule 23.1's verification requirement. *Cf. Weiss,* 520 F.Supp. 1098 at 1100 (demand requirement of rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight).

Lewis argues that he relied upon the factual investigation of his attorney Markowitz and that Markowitz conducted a very substantial investigation before filing this suit. Lewis admitted that his "investigation" of the subject matter of the instant case was limited to his reading of a single journal article and that he verified the complaint two days after the newspaper article was published. The directors argue that Lewis' failure to conduct his own investigation of the allegations of the complaint placed him in direct violation of the verification requirements of rule 23.1. We must decide whether reliance solely on a journal article can be the basis for verification of a stockholder derivative complaint.

■ The verification requirement "was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them." *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). In *Kauffman,* the court, in discussing the demand requirements of rule 23.1, reminded:

> For lawyers and judges accustomed to the liberalized "notice" pleading of the Federal Rules, F.R.Civ.P. 8, a brief review of the background of Rule 23.1 is in order. Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach.

479 F.2d at 263. In *Porte v. Home Federal Savings & Loan Association,* 409 F.Supp. 752, 754 (N.D.Ill.1976), the court stated: "Before a court can proceed with a derivative suit, it must be assured that the plaintiff or some other person has investigated the charges and found them to have substance." On the other hand, it should be remembered that "the verification requirement of Rule 23.1 is intended only to clear the courts of strike suits and not to be a general impediment to shareholder derivative actions." *Markowitz v. Brody,* 90 F.R.D. 542, 549–50 n.2 (S.D.N.Y.1981) (citing *Surowitz*).

Reliance on an article in *The Wall Street Journal* is not reliance on an insubstantial or meaningless investigation. Plaintiffs and their attorneys need not make further expenditures to prove independently that which may be read with some confidence of truthfulness and accuracy in a respected financial journal. We believe that such a basis satisfies the policy behind rule 23.1 of discouraging strike suits. Neither the district court nor the defendants have identified any material errors or irregularities in the averments of the complaint. Without evidence that the allegations are without foundation, the district court's finding that the original complaint was not verified is an abuse of discretion. Likewise, the refusal to permit the legally sufficient amended complaint to be filed is an abuse of discretion. Because we find Lewis' investigation alone sufficient to satisfy the verification requirement, it is unnecessary to consider the investigation undertaken by his counsel, Markowitz.[3]

### D.

Rule 23.1 provides in part: "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." The district court noted in its memorandum accompanying its order that "[d]efendants also allege in their dismissal motions that it appears that plaintiff does not fairly and adequately represent the interests of the shareholders as he has but one hundred shares of the corporate stock as compared with nearly eight million outstanding." Although the district court did not specifically rely on a finding that Lewis was an inadequate representative of Hammermill and its shareholders in denying Lewis' motion to amend his complaint, the proposed amended complaint will not effect Lewis' status as representative of Hammermill and its shareholders. We be-

lieve that it is thus necessary to determine whether the district court's decision may be affirmed because Lewis cannot fairly and adequately represent the interests of the Hammermill shareholders. *See Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441, 443 (6th Cir. 1981) (abuse-of-discretion standard of review). The burden is on the defendant to demonstrate that the representation will be inadequate. *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592–93 n.15 (5th Cir. 1979).

The fact that Lewis' investment is comparatively small is irrelevant. *See Marshall v. Spang & Co.*, 321 F.Supp. 1310, 1312 (W.D.Pa.1971). Where a derivative plaintiff's financial security interest is minimal, the defendant's protection from an alleged "strike suit" is to request the court to order the plaintiff to post security for costs or expenses. *See Levine v. Bradlee*, 378 F.2d 620, 623–24 (3d Cir. 1967). Thus, there is no basis for dismissing Lewis' complaint simply because he only owns a few shares of Hammermill's stock.

In *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975) (class representation under rule 23(a)(4)), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), this court stated: "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Similar tests have been used for rule 23.1. *See Schupack v. Covelli*, 512 F.Supp. 1310, 1312 (W.D.Pa. 1981); *Denny v. Carey*, 73 F.R.D. 654, 656 (E.D.Pa.1977). *Cf. G. A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 26 n.3 (1st Cir. 1975) (cases decided under rule 23(a)(4) may be used in analyzing the requirements of rule 23.1). Defendants do not argue that the two factors in *Wetzel* are not met in this case. Indeed, "plaintiff Lewis' past experience suggests

**3.** We note that Lewis' complaint contains many facts and much information that are not in the journal article. For purposes of our decision, however, we will assume that the heart of the complaint in need of verification—the allegations regarding the settlement—was solely derived from the article.

that he and his counsel will be able to provide vigorous advocacy for the members of the class which he now seeks to represent." *Markewich v. Adikes*, 76 F.R.D. 68, 75 (E.D.N.Y.1977).

At his deposition, taken over four months after he verified the complaint, Lewis displayed a complete ignorance of facts concerning the transaction that he was challenging. The directors argue that plaintiff shareholder cannot fairly and adequately represent the interests of the other shareholders unless he has knowledge of the material facts in support of his claim. There are certainly cases that support such a requirement. *See Roussel v. Tidelands Capital Corp.*, 438 F.Supp. 684, 688 (N.D.Ala. 1977). *See also Apanewicz v. GMC*, 80 F.R.D. 672, 679 (E.D.Pa.1978) (Fed.R.Civ.P. 23(a)(4)). We do not believe, however, that such a requirement makes vigorous representation of the class any more likely. The adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel. We believe that the requirements in *Wetzel* are sufficient to insure adequate representation and decline to require anything further. Lewis and his attorney are quite able to represent the shareholders' interests in this case. We thus conclude that the district court's refusal to permit a motion to amend, on this or any of its stated grounds, was an abuse of discretion.

### III.

Impartiality and the appearance of impartiality in a judicial officer are the sine qua non of the American legal system. In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968), the United States Supreme Court stated: "[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." Lewis argues that, on remand, this court should order, under its supervisory power and pursuant to 28 U.S.C. § 455

(1976), that the case be assigned to another judge. Without pausing to consider whether there is a basis for legal disqualification, we conclude that the undisputed facts dictate that the appearance of justice will be served only if the assignment to another judge is made, and we will, pursuant to our supervisory power, so direct.

### IV.

The order of the district court will be reversed and the case remanded for assignment to another judge.