Ellen Rae KAUFMAN, Plaintiff,

v.

**KANSAS GAS AND ELECTRIC COMPANY, Nominal Defendant,**

and

**Wilson K. Cadman, et al., Defendants.**

No. 85–1899–K.

United States District Court,
D. Kansas.

May 29, 1986.

Gene Mesh & Patricia A. Kindel, Cincinnati, Ohio, David M. Rapp, Wichita, Kan., for plaintiff.

Robert S. Medvecky, Reed & Priest, Washington, D.C., Richard C. Hite, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for nominal defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case is before the Court on defendants' motion to dismiss for failure to com-

ply with the "demand" requirement of F.R. Civ.P. 23.1. Plaintiff Ellen Rae Kaufman, a shareholder of Kansas Gas and Electric Company (KG & E), brought this derivative action for the benefit of KG & E, nominal defendant, against its Board of Directors, alleging waste of corporate assets due to mismanagement and breach of fiduciary duties in connection with KG & E's involvement in the construction and operation of the Wolf Creek Nuclear Power Plant. Plaintiff did not make demand upon KG & E's directors to instigate this suit themselves prior to filing her suit. Rule 23.1 requires that such demand be made; otherwise plaintiff must plead with factual particularity why such demand would have been futile. The basis of defendants' motion is that plaintiff failed to comply with the requirements of Rule 23.1, and therefore this suit must be dismissed.

For the reasons set forth below, the Court finds the demand was not excused as futile in this case, and accordingly will dismiss this derivative suit for failure to comply with Rule 23.1.

KG & E is an electric utility company located in Wichita, Kansas. KG & E has a 47% interest in the Wolf Creek Nuclear Power Plant (Wolf Creek) located near Burlington, Kansas; the remaining interests are held by Kansas City Power and Light Company (47%) and Kansas Electric Power Cooperative, Inc. (6%). Planning for Wolf Creek began in 1973. At that time the estimated cost of construction was 525 million dollars. By the time construction began in 1977, the estimated cost of the project had increased to 1.033 billion dollars. By July, 1984 the cost was estimated at 2.904 billion dollars. Although Wolf Creek was scheduled for completion in 1982, it did not begin operating until March of 1985. At this date it is on line and producing power.

Plaintiff, in her amended complaint, alleges that KG & E's Board of Directors was guilty of mismanagement during the construction of Wolf Creek. Specifically, she alleges their monitoring role was inefficient, ineffective, and inappropriate (¶ 12); their construction management was grossly inadequate (¶ 14); they lost control of the costs and scheduling (¶ 15); their budgeting process was deficient (¶ 18); they failed to remove the major site constructor from the job after concluding his performance was unacceptable in October, 1981 (¶ 22); and they failed to adequately control the quality of safety-related systems, resulting in a civil penalty of $40,000.00 imposed by the Nuclear Regulatory Commission (¶ 23).

On January 3, 1985, KG & E applied with the Kansas Corporation Commission (KCC) for rate increases to cover the costs of Wolf Creek. KG & E requested a rate base of 2.030 billion dollars. The KCC held extensive hearings to discover, *inter alia,* the reasonableness of the costs, acquisition, and construction of Wolf Creek, the reasonableness of the cost of operating Wolf Creek, the reasonableness of the management decisions to continue construction on a year to year basis, and whether any portion of the costs of acquiring and constructing Wolf Creek were incurred due to inefficiency or imprudence.

The KCC, in an order issued in September of 1985, allowed a rate base of only 994 million dollars, approximately one billion dollars less than requested. The Commission concluded that $450,000.00 of the construction costs and 1,828,262 man hours of labor were imprudently incurred. Except as to these findings of unreasonable increases in construction costs, the Commission *did not* base its findings on imprudence on the part of KG & E:

> We are not basing this decision on a "prudence determination." Although substantial evidence has been presented that the excessive costs of Wolf Creek are the consequence of imprudent decisions and actions of the applicant, we do not make such a finding today. We do believe that KG & E has not performed adequately through much of the period during which Wolf Creek has been built and that more rigorous reviews of likely consequences and alternatives may have avoided the exorbitant costs associated with Wolf Creek. We do find that substantial risks were involved in the Wolf

Creek project and a significant portion of the economic consequences should be shared by the company.

KCC Order Sept. 27, 1985, pp. 86–7, ¶ 4.

The plaintiff, in her complaint, further alleges that the directors failed to advise the shareholders of the enormous risks undertaken in the Wolf Creek project, including: low capital cost estimates; failure to achieve fuel savings sufficient to offset capital costs; unavailability of adequate nuclear accident insurance; decline in cost of alternative fuel and increase in availability of alternative fuel; probability of maintenance problems, costs of which must be borne by shareholders; and probability the KCC would deny the requested rate increase (¶ 31.) Plaintiff argues that had the shareholders been fully apprised of these facts, they would not have voted to continue construction in 1980 and 1981. (¶ 32.)

Plaintiff alleges that the directors, through mismanagement and breach of their fiduciary duty of due care, have wasted corporate assets in the construction and ownership of Wolf Creek. Plaintiff claims the shareholders have been damaged in the amount of one billion dollars (equal to the amount of requested rate increase denied by the KCC).

### Discussion

F.R.Civ.P. 23.1 provides, in pertinent part, that in a derivative action "[t]he complaint shall also allege with *particularity* the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." (Emphasis added.)

Both parties are in agreement that plaintiff made no demand on the defendants. Plaintiff alleges she is excused from doing so because demand would be "futile". In paragraph 8 of her complaint, plaintiff states:

No demand has been made by plaintiff upon KG & E's Board of Directors to bring this action because the demand would be futile because the claims al-

leged herein arise from a long-term continuing course of corporate misconduct, mismanagement and waste which do not require demand under Rule 23.1. Demand is also not required because the directors of KG & E have not been duly diligent in respect to the building and construction of Wolf Creek and have thereby caused substantial waste of KG & E assets. The directors cannot defend their actions by any alleged "independent" business judgment or by not bringing this action against defendant directors since it is undoubtedly in the benefit of KG & E to recover the amount wasted and squandered by the defendant directors on the Wolf Creek facility.

Defendants argue, in their motion to dismiss, that plaintiff has failed to set forth any particularized factual allegations which would excuse demand under the controlling law.

The sole issue before this Court, then, is: when is a shareholder's demand upon a board of directors, to redress an alleged wrong to the corporation, excused as futile prior to the filing of a derivative suit?

As a preliminary matter, the parties have agreed that the choice of law question need not be resolved, as K.S.A. 60–223a is virtually identical to Rule 23.1. Moreover, the Kansas Supreme Court found federal law "persuasive" in its only decision interpreting the "demand" rule of K.S.A. 60–223a. *Newton v. Hornblower,* 224 Kan. 506, 582 P.2d 1136 (1978).

If the choice of law issue did need to be resolved, however, it is clear that federal law would control in determining whether the allegations of the complaint are *particular* enough, *Allison v. General Motors Corp.,* 604 F.Supp. 1106, 1115 (D.Del.1985); *Walden v. Elrod,* 72 F.R.D. 5, 13 (W.D.Okla.1976), while state substantive law determines whether the *reasons* offered by plaintiff for excusing demand are adequate. *Lewis v. Curtis,* 671 F.2d 779 (3d Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Tabas v. Mullane,* 608 F.Supp. 759, 765 (D.N.J.

1985); *Allison v. General Motors Corp.,* 604 F.Supp. at 1106.

A cardinal rule of corporate law is that directors, rather than shareholders, manage the business and affairs of a corporation. *Newton v. Hornblower,* 224 Kan. 506, 582 P.2d 1136 (1978). Accordingly, the authority to sue for corporate injuries is primarily in the corporate management. *In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). However, a shareholder is not powerless to challenge director action which results in harm to the corporation. "The machinery of corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or unfaithful management." *Aronson v. Lewis,* 473 A.2d 805, 811 (Del.1984). The derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the company refused to assert a claim belonging to it. The nature of the action is twofold. First, it is the equivalent of a suit by the shareholder to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it. *Aronson v. Lewis,* 473 A.2d at 811.

By its very nature, the derivative action impinges on the managerial freedom of directors. In *Lewis v. Graves,* 701 F.2d 245, 246 (2d Cir.1983), the court aptly observed:

A derivative suit often brings into the litigation arena parties holding widely divergent views as to how the affairs of a corporation can best be conducted. Directors of a corporation ordinarily believe that they have been good stewards of corporate assets. They also believe that, by virtue of their offices, they are in a better position to decide whether it is in the corporation's best interests to pursue remedies for alleged wrongs committed against it. A derivative plaintiff, on the contrary, usually has little or no confidence that the corporation's directors will pursue remedies designed to correct alleged wrongdoing. Like darkened ships passing in the night, neither has a fair view of the other.

Hence, the demand requirement of Rule 23.1 exists at a threshold " 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.' " *Elfenbein v. Gulf & Western Industries, Inc.,* 590 F.2d 445, 450 (2d Cir.1978), *quoting Brody v. Chemical Bank,* 517 F.2d 932, 934 (2d Cir.1975).

The requirement for demand upon directors by a plaintiff who pursues the extraordinary remedy of a derivative suit has been recognized in this country for over a century. *See Hawes v. Oakland,* 104 U.S. (14 Otto) 450, 26 L.Ed. 827 (1882). The requirement, first established by the Supreme Court and now codified in Rule 23.1, represents "a procedural resolution of the tension between the usual directive that a board of directors conduct the affairs of the corporation and the power given to shareholders to remedy corporate directors' misfeasance, malfeasance, and nonfeasance by instituting actions on behalf of the corporation." *Allison v. General Motors Corp.,* 604 F.Supp. at 1112. In *Allison,* the court went on to make the following observation:

[R]ule 23.1 recognizes that it is sometimes necessary to have shareholders police, enforce, and indeed assume the directors' duties of corporate governance. However, Rule 23.1 also acknowledges that because shareholders could be overzealous in their enforcement actions, there must be rules to "police the police."

604 F.Supp. at 1112.

Practically speaking, the demand requirement promotes a form of "alternative dispute resolution"—that is, the corporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation. *See Lewis v. Graves,* 701 F.2d at 247. Deference to directors' judgment may also result in the termination of meritless actions brought solely for their settlement or harassment value ("strike

suits"). *Aronson v. Lewis*, 473 A.2d at 812. Moreover, where litigation is appropriate, the derivative corporation will often be in a better position to bring the suit because of superior financial resources and knowledge of the challenged transaction. *Lewis v. Graves*, 701 F.2d at 248.

■ Despite the strong policy and practical advantages favoring exhaustion of intracorporate remedies, the demand requirement of Rule 23.1 is not without exception. A shareholder may be allowed to assume control of litigation on the corporation's behalf without first affording the directors the opportunity to occupy their normal status by making demand, if the shareholder can show his case is exceptional or, in other words, that demand would be a futile, useless exercise. Thus, the shareholder must demonstrate a degree of antagonism between the directors and the corporate interest such that the directors would be incapable of doing their duty. *In Re Kauffman Mutual Fund Actions*, 479 F.2d at 263.

■ Under Rule 23.1 the plaintiff must allege with factual particularity the reasons why demand is futile and should be excused. The burden is on the plaintiff to show that the requirements of the rule have been satisfied. *In Re Kauffman Mutual Fund Actions*, 479 F.2d at 263. This Court must then determine, solely on the basis of the complaint, whether the plaintiff has met this burden; whether "any set of facts [are] shown that would prove futility." *Newton v. Hornblower*, 224 Kan. at 511, 582 P.2d 1136. All well-pled facts are assumed to be true. *Tabas v. Mullane*, 608 F.Supp. at 765. The decision as to whether plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies solely within the discretion of the trial court. *Lewis v. Graves*, 701 F.2d at 248; *Newton v. Hornblower*, 224 Kan. at 511, 582 P.2d 1136. If the complaint does recite sufficient facts to establish futility, courts are generally lenient in excusing demand. *Newton v. Hornblower*, 224 Kan. at 511, 582 P.2d 1136; *see also deHaas v. Empire Petroleum Co.*, 435 F.2d 1223 (10th Cir. 1970). This standard does not mean a court will be lenient in finding there are sufficient facts pled to establish futility. Rather, it means that *if* the court finds sufficient facts *are* pled, then it will be lenient in excusing demand—a matter within its discretion. As noted in *Lewis v. Curtis*, 671 F.2d 779, 784, "because of the important policy behind this rule, 'the demand requirement of Rule 23.1 should be rigorously enforced.'" (*Quoting Cramer v. GT & E Corp.*, 582 F.2d 259, 275 (3d Cir.1978), *cert. denied* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).)

Plaintiff argues that in determining whether her complaint is sufficiently "particularized" regarding "futility" for purposes of Rule 23.1, the Court should employ the "liberal pleading requirement" of Rule 8. Plaintiff cites no authority for this proposition and, in fact, it is wrong. In *Allison v. General Motors Corp.*, 604 F.Supp. at 1112, the court noted, "Rule 23.1, devoted exclusively to derivative actions, is a marked departure from the 'notice' pleading philosophy of the Federal Rules of Civil Procedure." *See also In Re Kauffman Mutual Fund Actions*, 479 F.2d at 263 ("Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach."); *Tabas v. Mullane*, 608 F.Supp. at 766 ("Stricter pleading requirements are imposed than the usual requirement that the allegations of the complaint must only give fair notice of a claim.").

Plaintiff argues her complaint, taken as a whole, sets forth the following justifications for excusing demand due to futility: (1) the defendant directors, through a course of mismanagement and breach of fiduciary duty, participated in and approved the decision to construct and operate Wolf Creek, which resulted in a waste of corporate assets; (2) all of KG & E's directors are named as defendants and these directors could not be expected to sue themselves; (3) by filing a motion to dismiss, the directors have evidenced their hostility toward this lawsuit. Each of these "justifications" will be discussed separately.

**(1)** *Participating in and Approving Corporate Waste Through a Course of Mismanagement.*

The vast majority of federal courts hold that "where mere approval of the corporate action, *absent self-interest or bias,* is the sole basis for establishing the directors' "wrongdoing" and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed." *In Re Kauffman Mutual Fund Actions,* 479 F.2d at 265 (emphasis added). *See also Wolgin v. Simon,* 722 F.2d 389, 392 (8th Cir.1983); *Lewis v. Graves,* 701 F.2d 245, 248; *Grossman v. Johnson,* 674 F.2d 115, 124 (1st Cir.), *cert. denied* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Lewis v. Curtis,* 671 F.2d 779, 785; *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1210 (9th Cir.1980); *Atkins v. Tony Lama Co., Inc.,* 624 F.Supp. 250, 255 (S.D.Ind.1985); *Seidel v. Public Service Company of New Hampshire,* 616 F.Supp. 1342, 1350–51 (D.N.H. 1985); *Lewis v. Sporck,* 612 F.Supp. 1316, 1322 (N.D.Cal.1985); *Newton v. Hornblower,* 224 Kan. 506, 511, 582 P.2d 1136.

Plaintiff argues the directors are sufficiently "interested" by virtue of their *participation* in and *approval* of the construction of Wolf Creek. Plaintiff relies on the following language in *Lewis v. Graves:* "Demand is presumed futile where the directors are ... *involved in* the transaction attacked." 701 F.2d at 248 (emphasis added). Clearly, the defendants were "involved in" the decision to construct Wolf Creek. However, the plaintiff's quote from *Lewis v. Graves* is taken out of context. The entire quote, minus the ellipsis, reads, "[d]emand is presumed futile where the directors are *antagonistic, adversely interested,* or involved in the transaction attacked." 701 F.2d at 248 (emphasis added). Taking the quote as a whole, it is clear the court's use of the words "involved in the transaction" was intended to mean *illegal* or *fraudulent* involvement of the type that would make the directors antagonistic to the corporation's best interest. This intention is clarified by the court's subsequent statement that "absent specific allegations of *self-dealing or bias* on the part of the majority of the board, mere approval or acquiescence are insufficient to render demand futile." 701 F.2d at 248.

That a higher level of "interest" is required to establish futility than mere participation in decisions which do not involve self-dealing or fraud has been discussed by several federal courts. For instance, in *Lewis v. Sporck,* 612 F.Supp. at 1322, the court noted that under the *Kauffman* standard for establishing futility, "whether an act [is] 'completely undirected to a corporate purpose' [raising a presumption of bias] depends on whether or not the acts *benefited the directors personally at the expense of the corporation.*" (*Quoting Greenspun v. Del E. Webb Corp.,* 634 F.2d at 1210.) In *Weiss v. Temporary Investment Fund, Inc.,* 516 F.Supp. 665, 672 (D.Del.1981), *aff'd* 692 F.2d 928 (3d. Cir.), *vacated on other grounds* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984), the court observed that an "interested" director was one who engaged in self-dealing or "otherwise stood to obtain any personal advantage." Likewise, in *Vanderbilt v. Geo-Energy Ltd.,* 590 F.Supp. 999, 1001 (E.D.Pa.1984), the court found the directors, who had engaged in a scheme to deplete the corporate defendant of its assets "for defendants' *personal gain* [and] to the detriment of the [corporation] and its minority shareholders," were sufficiently self-interested and biased that demand upon them would be futile. (Emphasis added.)

There is no allegation that a self-dealing transaction was involved in the case at bar. Plaintiff has alleged no facts from which this Court could find the directors' decisions regarding Wolf Creek were made to benefit them personally to the detriment of the corporation. In fact, plaintiff has specifically denied she is charging the directors with fraud or self-dealing. (Kaufman Depo., pp. 47–48.) Clearly, the directors' participation in the Wolf Creek decisions, as garnered from the four corners of the complaint, was not the sort of "self-dealing" which would cause demand upon them to be futile as a matter of law.

Although plaintiff cites numerous cases where she alleges demand was excused due to mere participation or approval by a majority of the directors, each of the cases she relies on involve allegations of self-dealing or hostility to the merits of the lawsuit. *See Meltzer v. Atlantic Research Corp.*, 330 F.2d 946, 947 (4th Cir.), *cert. denied* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964) (self-dealing alleged); *Vanderbilt v. Geo-Energy Ltd.*, 590 F.Supp. 999 (self-dealing alleged); *Brooks v. Land Drilling Co.*, 564 F.Supp. 1518, 1520–22 (D.Colo. 1983) (self-dealing alleged); *Crane Co. v. Harsco Corp.*, 511 F.Supp. 294, 298 (D.Del. 1981) (self-dealing alleged); *In Re Caesar's Palace Securities Litigation*, 360 F.Supp. 366, 391 (S.D.N.Y.1973) (self-dealing alleged); *Oldfield v. Alston*, 77 F.R.D. 735, 739 (N.D.Ga.1978) (knowledge of illegality of approved transactions, opposition to derivative action on the merits); *Jannes v. Microwave Communications, Inc.*, 57 F.R.D. 18 (N.D.Ill.1972) (self-dealing alleged).

In *In Re Kauffman*, the court, after delineating the "self-dealing or bias" standard of futility, went on to say:

It does not follow ... that a director who merely made an erroneous business judgment in connection with what was plainly a corporate act will "refuse to do [his] duty in behalf of the corporation if [he] were asked to do so." [Citation omitted]. Indeed, to excuse demand in these circumstances—majority of the board approval of an allegedly injurious corporate act—would lead to serious dilution of Rule 23.1.

479 F.2d at 265.

Likewise, in *Lewis v. Graves*, 701 F.2d at 248, the court observed:

Rule 23.1 would be substantially diluted if prior board approval standing alone established futility. Derivative suits are almost invariably directed at major, allegedly illegal, corporate transactions. By virtue of their offices, directors ordinarily participate in the decisionmaking involved in such transactions ... excusing demand on the mere basis of prior board acquiescence, therefore, would obviate the need for demand in practically every case.

Similarly, in *Lewis v. Sporck*, 612 F.Supp. at 1322, the court noted:

[T]here is no allegation that the [alleged wrongdoing] personally benefited the members of the board at [the corporation's] expense, nor any other indication of bias. All that is alleged is approval of corporate wrongdoing, which, by itself, is insufficient to justify a finding of futility .... [T]he board must be given a fair opportunity to decide whether the corporation itself should bring suit.

Because plaintiff has failed to allege more than mere acquiescence and approval of the alleged "corporate waste" in constructing and operating Wolf Creek, and has failed to demonstrate how the defendants benefited from this wrongful conduct, demand is not excused on the ground of "participation".

### (2) *Naming All Directors as Defendants.*

Plaintiff, in her memorandum opposing dismissal, vigorously asserts that the mere naming of all directors is a sufficient justification for excusing demand. This argument lacks logic. If the Court were to accept it, derivative plaintiffs could readily circumvent Rule 23.1's demand requirements simply by naming all directors in the complaint. Permitting plaintiff to employ this tactic would eviscerate Rule 23.1. Notably, every circuit court that has considered this argument has rejected it. *Lewis v. Graves*, 701 F.2d at 249; *Lewis v. Curtis*, 671 F.2d at 785; *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir.1977); *see also Atkins v. Tony Lama Co., Inc.*, 624 F.Supp. at 256; *Lewis v. Sporck*, 612 F.Supp. at 1323; *Hall v. Aliber*, 614 F.Supp. 473 (E.D.Mich.1985).

Plaintiff relies on *Newton v. Hornblower* as authority that if the majority of the board are accused of wrongdoing, demand is deemed futile. However, the Kansas Supreme Court, in *Newton*, actually stated that "if the majority of the board are accused of *self-dealing*, demand upon them to sue themselves is deemed futile." 224

Kan. at 511, 582 P.2d 1136 (emphasis added). As previously stated, there are no allegations of self-dealing in plaintiff's complaint. Therefore, merely naming the majority of the board as defendants, without alleging sufficient facts to establish self-dealing, does not establish futility. Mere participation by *all* of the directors does not create a presumption they will be antagonistic to the corporation's best interest.

Moreover, the cases are in agreement that the allegation that demand upon the directors would be futile because the directors "would be suing themselves" is not alone sufficient to excuse demand. *Lewis v. Curtis*, 671 F.2d at 779; *Heit v. Baird*, 567 F.2d at 1167; *Allison v. General Motors Corp.*, 604 F.Supp. at 1115; *Weiss v. Temporary Investment Funds, Inc.*, 516 F.Supp. at 672–73.

**(3)** *Defendants' Motion to Dismiss as Evidence of Hostility.*

 Unlike a motion to dismiss for failure to state a claim, defendants' motion to dismiss under Rule 23.1 does not go to the merits of plaintiff's lawsuit. Therefore, defendants have not evidenced any hostility toward this lawsuit by virtue of any of their actions before this Court. Moreover, the determination of whether demand is excused is made at the time the lawsuit is initiated. *Weiss v. Temporary Investment Funds, Inc.*, 516 F.Supp. at 673 ("[t]he futility of making the demand required by

Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight."). Naturally, defendants' motion to dismiss was not filed until after the suit was commenced. Accordingly, plaintiff is not excused from demand due to defendants' alleged "hostility".

*Conclusion*

 There is no indication in plaintiff's complaint that KG & E's Board of Directors cannot or would not make a good faith investigation of the wrongs of which plaintiff complains. Plaintiff has failed to particularize any facts which would justify a finding by this Court that demand was "futile". The allegations of mismanagement and waste do not suggest the defendant directors were involved in any illegal or fraudulent self-dealing. In fact, plaintiff's allegations suggest—at most—that defendant directors made a poor business judgment in connection with a plainly corporate act. There is no suggestion that any of these decisions or transactions were made to benefit the directors *personally.* As such, demand was not excused in this case. Accordingly, plaintiff's failure to make demand requires the Court to dismiss this action, without prejudice, under Rule 23.1.