951 F.2d 573
 1992 A.M.C. 1243, 21 Fed.R.Serv.3d 931
 CTC IMPORTS AND EXPORTS,
v.
NIGERIAN PETROLEUM CORPORATION, Gulf Shipping Agency
(Nigeria, Ltd.), Universe Maritime Pireaus, Marzelli, CASA,
MV "VYTINA", Nicholos, Captain Stratis, Rice Unruh, Russel,
Shelton, Individually and as Representative of British
Petroleum, British Petroleum, Sohio Supply Company Addax
Overseas S.A. of Panama
v.
INDAKWA, John, Schiefen, Jack, Matthew A., Thomas P.,
Olickan, Joseph, Mathai, Thomas, Omuhambe, Shadrah,
International Maritime Transport, Inc. Behrens, Wolfgang,
Ludwig, Peter, Doe, John Roe, John, XYZ Corporation
CTC Imports and Exports, Simon W. Tache, Esquire, Appellants.
 No. 90-1886.
 United States Court of Appeals,
Third Circuit.
 Argued May 6, 1991.
Decided Dec. 19, 1991.
Rehearing Denied Jan. 17, 1992.
 
 L. Obioma Aham (argued), Bellaire, Tex., Simon W. Tache (argued), Philadelphia, Pa., for appellant.
 Faustino Mattioni, Mattioni, Mattioni & Mattioni, Mary E. Reeves, Krusen, Evans & Byrne, James W. Johnson (argued), Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Donald J. Kennedy, Alan Heblack, Haight, Gardner, Poor & Havens, New York City, for appellees.
 Before MANSMANN and NYGAARD, Circuit Judges and RONEY, Circuit Judge*.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 CTC Imports and Exports sued to arrest the vessel M/V Vytina. The district court dismissed the complaint and upon motion imposed sanctions against CTC and its attorneys, Obioma Aham and Simon Tache, pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. They appeal from an order denying motions by Tache and Aham for reconsideration of the sanctions. We conclude that Aham is not an appellant. Thus we will dismiss his appeal. We hold that the district court properly sanctioned CTC. Because we further hold that the district court improperly dismissed Tache's motion for reconsideration, we will reverse the order denying Tache's motion and remand the matter to the district court.
 
 I.
 
 2
 CTC through its attorneys, Tache and Aham, falsely arrested a Nigerian oil shipment aboard the Vytina. On March 10, 1989, at about 11:00 P.M., Aham, an attorney for CTC, contacted Tache and requested Tache to act as local counsel for CTC in arresting the Vytina. Thereafter events moved rapidly. On March 11, a day before the Vytina was scheduled to arrive in Philadelphia, Tache filed a complaint against defendants/appellees. The complaint alleged that CTC was the rightful owner of cargo aboard the Vytina at Port of Bonny, Nigeria. It sought arrest of the vessel when it docked at Marcus Hook, Pennsylvania. On March 12, the district court issued an emergency order authorizing the arrest. On March 13, the Vytina arrived at Marcus Hook and the arrest warrant was executed.
 
 
 3
 On March 15, the district court vacated the arrest warrant pursuant to the parties' stipulation and the litigation proceeded. In the next two days, Captain Nikolaos Stratis, the master of the Vytina, and John Indakwa, President of CTC, were deposed. Stratis' testimony showed that CTC's claim of legal title was based on forged documents. On March 21, the district court held a hearing to resolve discovery disputes and ordered CTC to produce shipping documents to substantiate its legal title to the cargo. On March 26, defendants moved for an expedited hearing for summary judgment and the court heard oral argument on March 31. Because CTC failed to file a verification with its complaint, the court dismissed the complaint with leave to file a proper verification.
 
 
 4
 Defendants filed a joint motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. On April 27, 1990, the district court sanctioned Tache for conducting an inadequate pre-filing inquiry and CTC for filing a frivolous complaint pursuant to Rule 11. The court also sanctioned Aham pursuant to 28 U.S.C. § 1927 for entering an appearance after the arrest warrant had been vacated and for joining in all filed papers. It imposed joint and several liability for sanctions among these three parties and awarded the defendants attorneys' fees. 739 F.Supp. 966. On May 2, 1990, the court entered judgment.
 
 
 5
 On May 9, 1990, Tache on his own behalf filed a motion for reconsideration of the April 27 order. On July 2, 1990, Aham on his own behalf filed a similar motion. On October 22, 1990, the court denied Tache's and Aham's motions without opinion. On November 21, 1990, Tache and CTC filed a timely notice of appeal.
 
 II.
 
 6
 Before discussing the merits of the sanctions, we must decide the threshold issue of whether we have appellate jurisdiction for all parties. The notice of appeal reads:
 
 
 7
 Notice is hereby given that Plaintiff CTC IMPORTS and EXPORTS, by and through its undersigned counsel, L. Obioma Aham, Esquire; and Simon W. Tache, Esquire, in his own right, hereby appeal to the United States Court of Appeals for the Third Circuit from the order by this Court of October 22, 1990, denying the motions of Simon Tache, Esquire and L. Obioma Aham, Esquire, for reconsideration of the court's Order imposing Sanctions.
 
 
 8
 As to Tache, this notice satisfies Federal Rule of Appellate Procedure 3(c) (Rule 3(c)).[1] As to CTC and Aham, however, the notice presents problems.
 
 
 9
 First, Aham filed the notice of appeal not on his behalf, but on behalf of CTC. In Torres v. Oakland Scavenger Co., 487 U.S. 312, 317, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988), the Supreme Court held that if a party fails to satisfy the requirements of Rule 3(c), then the appellate court lacks jurisdiction over that party. Rule 3(c) requires the notice to "specify the party or parties taking the appeal." 487 U.S. at 314, 108 S.Ct. at 2407. Since the timely filing of a notice of appeal is mandatory and jurisdictional, the notice as to Aham's appeal is fatal unless he filed a functional equivalent of a timely notice. 487 U.S. at 317, 108 S.Ct. at 2409.
 
 
 10
 A functional equivalent to a notice of appeal must identify Aham as the party taking the appeal. See Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 665 (3d Cir.1990) (several documents when considered along with original notice of appeal serve as functional equivalent); Dura Systems, Inc. v. Rothbury Inv., Ltd., 886 F.2d 551 (3d Cir.1989) (consent order naming parties taking appeal serves as functional equivalent), cert. denied 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990). Nothing in the record serves as a functional equivalent. The only notice of appeal he filed was on behalf of CTC, which is not a notice on his behalf.[2] Aham failed to comply with the jurisdictional prerequisites.
 
 
 11
 Second, CTC purports to appeal from the order denying Tache's Federal Rule of Civil Procedure 59(e) motion for reconsideration.[3] It appealed from the wrong order under Rule 3(c). Rule 3(c) provides: "The notice of appeal ... shall designate the judgment, order or part thereof appealed from." When a Rule 59(e) motion is denied, "the judgment of the initial order becomes final and subject to appeal." Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir.1986). CTC cannot appeal from an order denying a motion it never filed. It should have appealed from the initial April 27 order imposing sanctions, which became final upon the denial of the Rule 59(e) motion. Thus CTC fails to meet the letter of Rule 3(c).
 
 
 12
 In Torres, the Court said "that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." 487 U.S. at 316, 108 S.Ct. at 2408. Thus if a party files a notice of appeal that fails to meet the letter of the rule, "a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." 487 U.S. at 317, 108 S.Ct. at 2408-09.
 
 
 13
 We conclude that the notice of appeal is a functional equivalent to giving notice that CTC is appealing the April 27 order. Our jurisprudence require that we liberally construe notices of appeal. See Foman v. Davis, 371 U.S. 178, 181-82, 83 S.Ct. 227, 229-30, 9 L.Ed.2d 222 (1962). It is clear that CTC intended and tried to appeal the April 27 order. There is no prejudice because all parties assumed that CTC was appealing the sanctions order and argued so. We will treat CTC's notice of appeal as "an effective, although inept, attempt to appeal from the [April 27] judgment" imposing sanctions. 371 U.S. at 181, 83 S.Ct. at 229. See Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977) ("if from the notice of appeal itself and the subsequent proceedings on appeal it appears that the appeal was intended to have been taken from an unspecified judgment order or part thereof, the notice may be construed as bringing up the unspecified order for review") (citing Foman, 371 U.S. 178, 83 S.Ct. 227). Thus, Tache and CTC are the only appellants properly before this court.
 
 III.
 A.
 
 14
 Tache appeals from the order denying his motion for reconsideration. He argues that the district court improperly denied his motion because he satisfied the requisite duties under Federal Rule of Civil Procedure 11 (Rule 11). We will treat this as a motion under Federal Rule of Civil Procedure 59(e), even though Tache identifies Rule 60(b) in his memorandum to support the motion. Rankin v. Heckler, 761 F.2d 936, 942 (3d Cir.1985) ("Regardless how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of a judgment may be treated as a motion to alter or amend the judgment under Rule 59(e)."). Though plaintiff designated his motion as a Rule 60(b) motion, we note that the parties briefed the merits. And as in Rankin because plaintiff "filed his motion seven days after entry of judgment, we treat it as a motion under Rule 59(e) challenging the entire judgment, including the [merits]." 761 F.2d at 942.
 
 
 15
 In his motion for reconsideration and memorandum to support the motion, Tache requests the district court to "reconsider and relieve me of its Order." By this Tache requests the district court to vacate its order. In his appellate brief, Tache requests us to "reverse[ ] and vacate[ ]" the district court's order. This relief is cognizable under Rule 59(e). Kelly v. Delaware River Joint Comm'n, 187 F.2d 93, 94 (3d Cir.), cert. denied 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951). It is clear that Tache intends to challenge the entire judgment and not just the denial of the motion. Regardless of how denominated, this motion is a Rule 59(e) motion. A denial of Rule 59(e) motion to alter or amend "brings up the underlying judgment for review." Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir.1982).
 
 
 16
 Since the standard of review for a denial of Rule 59(e) motion varies with the nature of the underlying judicial decision, our standard is that which we apply to review a Rule 11 sanction. Rauscher, 807 F.2d at 348. To determine whether sanctions are appropriate, we must consider the district court's factual determinations, legal conclusions, and exercise of discretion in shaping its sanction. To these we apply an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (citing Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66 (3d Cir.1988), cert. denied 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988)). A district court abuses its discretion when it misinterprets Rule 11 or clearly errs in assessing the evidence. 110 S.Ct. at 2461.
 
 B.
 Rule 11 provides, in relevant parts:
 
 17
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....
 
 
 18
 An attorney's signature certifies that the attorney has satisfied three duties: (1) that he has read the documents; (2) that he has made a reasonable inquiry; and (3) that he is not acting in bad faith. Each duty is independent; the violation of one triggers Rule 11 sanctions. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1335 (1990). The district court found that Tache failed to satisfy the second duty; it found Tache's inquiry "woefully inadequate."
 
 
 19
 To determine the reasonableness of an inquiry, the district court applies an objective "reasonableness under the circumstances" standard. Napier v. Thirty or More Unidentified Agents, 855 F.2d 1080, 1090-91 (3d Cir.1988). In applying this standard, the "court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11, reprinted in 97 F.R.D. 165, 199. See Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir.1985).
 
 
 20
 Because the standard is a fact specific one, the court must consider all the circumstances. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 95 (3d Cir.1988). "Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; ... or whether he depended on forwarding counsel or another member of the bar." Advisory Committee Note, 97 F.R.D. at 199. See Lingle, 847 F.2d at 95. Particularly relevant to this appeal is "whether [one] is in a position to know or acquire the relevant factual details." Colburn v. Upper Darby Township, 838 F.2d 663, 667 (3d Cir.), cert. denied 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1988).
 
 C.
 
 21
 In imposing sanctions against Tache, the district court reasoned as follows. First, the name of the master and the seal of the Vytina on CTC's bill of lading are plainly different from the actual master and ship's seal. Second, the documents further showed that the Vytina loaded the cargo of oil on February 25 and 26 and that the bill of lading was executed by the master on February 26. Had Tache simply referred to available maritime publications he would have found that the Vytina left Nigeria on February 24 and was approximately 700 miles into the Atlantic when the bill of lading was allegedly executed. Third, CTC offered no documentation evincing charter of the Vytina or financing for the purchase of oil with a market value in excess of $16 million. Fourth, before CTC filed its complaint an investigator from London's International Chamber of Commerce contacted CTC. The investigator informed CTC that its documents were forgeries and offered to assist in an investigation. Fifth, this was not CTC's first experience with forged shipping documents for cargo from Nigeria. CTC had laid claim to a cargo of Nigerian crude on board the M/T Barbro as recently as February 6, 1989. The cargo was, in fact, owned by Sohio Supply Company. This clearly placed CTC on notice that it had no valid claim to the cargo on board the Vytina.
 
 
 22
 On these findings the district court rejected Tache's argument that he made a reasonable inquiry given the circumstances. It concluded, "Even the most cursory investigation would have revealed the circumstances described above and would have put [Tache] on notice of the fraud before encumbering a vessel carrying a $16 million cargo." We disagree for three reasons.
 
 
 23
 First, the district court assumed that if knowledge of the above factors is attributable to one it is attributable to all. It considered CTC, Aham, and Tache to be on equal footing as to knowledge, access to information, and time constraints. Where, however, the court sanctions more than one party, it must make particularized findings and conclusions as to each party's liability considering his or her unique circumstances. The language of Rule 11 supports this conclusion: the district court must determine whether "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry" the pleadings have been properly filed. Fed.R.Civ.P. 11 (emphasis added). Circumstances may differ with each signer. While circumstances of one may bear on those of another, they may not be imputed to the other unless it is reasonable to do so. Here it was not.
 
 
 24
 The most damaging factors are attributable to CTC and perhaps Aham, but not to Tache. At the time of filing Tache was not in a position to know or obtain vital facts. Tache had no reason to suspect CTC's documents were forged. He had never worked for CTC before this matter. He did not know about the fraudulent M/T Barbro transaction. The ICC investigator did not contact him nor had he reason to know of a maritime inquiry, unless CTC informed him. It did not. Thus, the district court erred as a matter of law when it imputed knowledge of information Tache could not have reasonably obtained and liability for not acting on this knowledge.
 
 
 25
 Second, the district court found "that the Vytina did not arrive at port until Monday, March 13 ... undermines counsel's argument that a proper investigation could not be conducted because time was of the essence." The court was correct in that the Vytina actually arrived on March 13. Nonetheless Tache at the time was working under the assumption he had less than twenty-four hours to make the inquiry and, if proper, then to prepare the pleadings. Aham contacted Tache about acting as local counsel for CTC at about 11:00 P.M. on March 10, 1989. Aham forwarded the necessary documents to him the next morning on March 11. The Vytina was scheduled to arrive in Philadelphia on March 12. The district court found that the Vytina could discharge its cargo in a day, after which it could leave Philadelphia. Tache filed the complaint on March 11. By considering the actual time lapsed rather than the time Tache reasonably thought he had, the district court misapplied Rule 11 by using the wisdom of hindsight. Holtzman, 775 F.2d at 540. And it clearly erred when it implicitly found time was not of the essence. Lingle, 847 F.2d at 95.
 
 
 26
 Third, the Advisory Committee listed the lack of time and the need to rely on a client or forwarding counsel for information as factors in determining the propriety of Rule 11 sanctions. 97 F.R.D. at 199. Yet the district court made no findings as to these factors. These factors often function inversely: The shorter the time the more reasonable it is for an attorney to rely on the client or forwarding counsel. If an attorney is not allowed to reasonably rely on his client in circumstances where time is of the essence, then no attorney is safe in filing an emergency pleading. Rule 11 sanctions bad faith and unreasonable conduct; it does not sanction bad or undesirable circumstances. By failing to consider to what extent Tache could have relied on Aham and CTC, the district court misapplied Rule 11.
 
 
 27
 The apparent validity of the documents, the first time dealing with CTC, the lack of access to information, and the time constraint, all indicate that Tache acted reasonably under his circumstances. Indeed, exercising candor with the court, appellees' counsel conceded at oral argument that armed with the same information and facing the same circumstances he would "in all honesty probably be sitting where he [Tache] is."
 
 
 28
 The district court imposed sanctions against Tache because he caused the "manifestly frivolous arrest of a $16 million cargo of oil." In imposing Rule 11 sanction, however, the court does not pass judgment on the merits of an action. See Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir.1987) ("Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute"). Rather it requires the determination of a collateral issue: Whether the attorney has abused the judicial process. Cooter & Gell, 110 S.Ct. at 2456. See Teamsters Local Union, 841 F.2d at 68 (Rule 11 sanction is appropriate "only if the filing of the complaint constituted abusive litigation or misuse of the court's process"). In light of all the circumstances we hold Tache did not abuse the process and the district court erred by sanctioning him. See Cooter & Gell, 110 S.Ct. at 2461.D.
 
 
 29
 As discussed, the most damaging of the district court's findings are attributable to CTC. This was not CTC's first involvement with forged documents. CTC knew before it filed its complaint that the validity of its documents were being questioned by London's ICC. Armed with this knowledge and experience, CTC, the district court found, acted unreasonably when it sought to arrest a $16 million cargo of oil. We find no clear error in the court's fact-finding and hold that the district court did not abuse its discretion when it sanctioned CTC.
 
 IV.
 
 30
 We conclude that Aham is not an appellant; that the district court improperly dismissed Tache's motion for reconsideration; and that it did not abuse its discretion in sanctioning CTC. Accordingly, we will dismiss the appeal of Aham; we will affirm the order imposing sanctions against CTC; we will reverse the district court's order denying Tache's motion, and remand for the district court to vacate its judgment imposing sanctions on Tache.
 
 
 
 *
 Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation
 
 
 [1]
 When a Rule 59(e) motion is filed, it tolls the time for filing a notice of appeal under Federal Rule of Appellate Procedure 4(a) for all parties. Fed.R.App.P. 4(a)(4). See Rosen v. Rucker, 905 F.2d 702, 707 (3d Cir.1990). Thus all parties satisfied Rule 4(a)'s jurisdictional time requirement
 
 
 [2]
 Since the district court imposed joint and several liability, had Tache filed his motion on behalf of all the sanctioned parties we would face the issue of whether Tache's notice is a functional equivalent to a proper notice. But this is not the case. Tache moved and requested relief on his behalf only
 
 
 [3]
 We will further discuss the nature of the motion later in this opinion