Robert K. GREENFIELD, on behalf of himself and all others similarly situated, Plaintiff,

v.

U.S. HEALTHCARE, INC.; Leonard Abramson, Defendants.

Allen STRUNK, on behalf of himself and all others similarly situated, Plaintiff,

v.

U.S. HEALTHCARE, INC.; Leonard Abramson, Defendants.

Scott GARR and Patricia Garr, on behalf of themselves and all others similarly situated, Plaintiff,

v.

U.S. HEALTHCARE, INC.; Leonard Abramson, Defendants.

Civ. A. Nos. 92–6345, 92–6381 and 92–6412.

United States District Court, E.D. Pennsylvania.

Feb. 4, 1993.

---

R. Bruce McNew, James R. Malone, Jr., Greenfield & Chimicles, Haverford, PA, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Harris J. Sklar, Philadelphia, PA, and Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY, for plaintiffs.

Alan J. Davis, Carl W. Hittinger, Leslie H. Smith, Martin C. Bryce, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, and David F. Simon, Blue Bell, PA, for defendants.

## MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

Presently before the court are the motions of defendants U.S. Healthcare, Inc. and Leonard Abramson (collectively "U.S. Healthcare"), for sanctions against plaintiffs' attorneys James R. Malone, Jr., Arnold Levin, and Harris J. Sklar, pursuant to Federal Rule of Civil Procedure 11. For the reasons set forth below, U.S. Healthcare's motion will be granted and sanctions will be imposed in the manner set forth in the attached Order.

The court finds, in addition, that the conduct of plaintiffs' attorneys may constitute a violation of the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. Accordingly, pursuant to

Local Rule 14, this matter will be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for review, and, if necessary, for appropriate disciplinary proceedings.

## I. BACKGROUND

### A. *Conduct of Plaintiffs' Attorneys*

On November 4, 1992, the *Wall Street Journal* published an article entitled "U.S. Healthcare Insiders Sold Stock Before Last Week's 17% Price Decline." The article stated:

> U.S. Healthcare, Inc. insiders were heavy sellers of the stock before its 17% two-day drop last week on disappointing third quarter earnings.... [I]nsiders, including Leonard Abramson, the company's chairman and president, had been selling shares as the stock climbed. During the third quarter, 16 U.S. Healthcare insiders sold a total of 742,858 shares for a total of more than $28.8 million, filings with the Securities and Exchange Commission show.

On the morning of November 4, 1992, James R. Malone, Jr., Esquire ("Malone"), a partner at Greenfield & Chimicles, read the *Wall Street Journal* article and suspected a violation of federal securities laws. Believing that the information set forth in the *Wall Street Journal* article "merit[ed] further investigation," Malone reviewed a variety of information, including: (1) a "representative sampling" of media stories relating to U.S. Healthcare; (2) a disclosure report containing a variety of background and financial information regarding U.S. Healthcare; (3) abstracts of the U.S. Healthcare SEC filings referred to in the *Wall Street Journal* article; and (4) a number of "on line" analyst reports and newspaper articles reflecting "buy" recommendations for U.S. Healthcare's stock.

(Malone Aff. ¶¶ 5–8.) After reviewing this information, Malone concluded that he had reasonable grounds to file a class action against U.S. Healthcare for alleged violations of federal securities laws. (Malone Aff. ¶ 9.)

Having a case but no client, Malone telephoned Robert K. Greenfield ("Greenfield") in Florida.[1] Malone informed Greenfield that he had read a story about insider trading at U.S. Healthcare in the *Wall Street Journal*, he asked Greenfield if owned stock in U.S. Healthcare, and he asked Greenfield if he would like Greenfield & Chimicles to file suit on his behalf if the firm concluded that there had been any actionable wrongdoing.[2] (R. at 20.)[3] Greenfield answered that he did own stock in U.S. Healthcare, he told Malone how many shares he owned and when he bought it, and he consented, on the telephone, to the filing of a lawsuit where Greenfield would be named as the plaintiff. (R. at 20.) During this brief conversation, Malone never explained to Greenfield the specifics of his proposed lawsuit against U.S. Healthcare, nor did he inquire as to whether Greenfield would have any potential conflicts of interest.

Later that same day, Malone filed a 12-page complaint against U.S. Healthcare, Inc. and Leonard Abramson (Civil Action No. 92–6345) ("Greenfield Complaint"), alleging violations of the federal securities laws, specifically, §§ 10(b) and 20 of the Exchange Act and Rule 10b–5 promulgated thereunder. Malone also alleged that "Plaintiff [Greenfield] will fairly and adequately protect the interests of the Class." (Greenfield Complaint ¶ 13.) After filing the complaint, Malone sent a copy to Greenfield, along with a retainer agreement, which was to be signed and dated by Greenfield and then returned.[4]

---

1. As referred to later in this opinion, there is an undenied allegation that Greenfield & Chimicles maintains a list of persons in its office, presumably with their consent, that are not clients but as shareholders are willing and able to become clients if the firm sees the need to commence a case, but at the time has no client. Plaintiff here was on such a list.

2. Robert K. Greenfield is unrelated to Richard Greenfield, the name partner in Malone's law firm, Greenfield & Chimicles.

3. All references to the record refer to the transcript of this court's hearing on December 10, 1992.

4. Greenfield signed and dated the retainer agreement on November 5, 1992. (R. at 25.)

Also on November 4, 1992, Fred Taylor Isquith, Esquire ("Isquith"), a partner at Wolf Haldenstein Adler Freeman & Herz in New York, allegedly received a telephone call from Allen Strunk's ("Strunk") personal attorney in Florida expressing concern over the drop in price of his client's U.S. Healthcare stock.[5] According to Isquith, Strunk's attorney stated that his client believed there had been incomplete information about U.S. Healthcare available to investors when he made his investment, and Strunk's Florida attorney allegedly asked Isquith to investigate. (Isquith Aff. ¶ 3.) After "due deliberation and considerable research," allegedly of the same SEC documents and analyst reports reviewed by Malone, Isquith concluded that a class action was warranted against U.S. Healthcare for violations of federal securities laws. (Isquith Aff. ¶¶ 3–5.) After determining that Pennsylvania was the proper forum in which to file suit, Isquith allegedly telephoned Greenfield & Chimicles to discuss the case and inquire as to whether Greenfield & Chimicles would act as local and co-counsel for Strunk. (Isquith Aff. ¶¶ 8–10.) After some discussion, Greenfield & Chimicles agreed to represent Strunk. (Isquith Aff. ¶ 10.)

On November 5, 1992, Greenfield & Chimicles filed a complaint against U.S. Healthcare on behalf of Strunk (Civil Action No. 92–6381) ("Strunk Complaint"). Except for the plaintiff's name, the Strunk Complaint is a verbatim version of the Greenfield Complaint. Both the Greenfield and Strunk Complaints were signed by Malone.

The next day, November 6, 1992, Arnold Levin, Esquire ("Levin"), of Levin Fishbein Sedran & Berman, and Harris J. Sklar, Esquire ("Sklar"), filed suit against U.S. Healthcare on behalf of Scott and Patricia Garr (Civil Action No. 92–6412) ("Garr Complaint"). Once again, except for some typographical errors and the plaintiff's name, the Garr Complaint is a verbatim version of the Greenfield and Strunk Complaints.[6]

### B. *U.S. Healthcare's Motion for Rule 11 Sanctions*

On November 6, 1992, U.S. Healthcare filed the instant motion for Rule 11 sanctions. In support of its motion for sanctions, U.S. Healthcare argues that plaintiffs' attorneys violated both Fed.R.Civ.P. 11 and Rule 1.4 of the Rules of Professional Conduct because they failed to conduct a reasonable inquiry to ensure that their pleadings were "well grounded in fact" before signing each complaint. (Motion Brief at 2, 7–12.) More specifically, U.S. Healthcare argues that if plaintiffs' counsel had conducted a reasonable inquiry, they would have discovered the falsity of their allegations. (Motion Brief at 7–12.) According to U.S. Healthcare, the reasonably ascertainable facts are that, prior to the issuance of the company's third quarter report, numerous analysts had predicted a rise in U.S. Healthcare's medical loss ratio, which represents the difference between what U.S. Healthcare spends and what it recovers in premiums, and hence a drop in U.S. Healthcare's earnings. (Motion Brief at 8–12.) Accordingly, U.S. Healthcare moved for the dismissal with prejudice of each action, the payment of costs and attorneys' fees incurred to date, and an additional sanction in the nature of a "penalty" to be determined by the court. (Motion at 2.)

On November 8, 1992, Greenfield, for the first time, read the complaint that Malone had sent to him in Florida and realized that he had "made a horrendous mistake." (Ex. M–4.)[7] According to Greenfield, upon reading the allegations which had been attributed to him in the Greenfield Complaint, he was "aghast." (R. at 24.) He knew of nothing Leonard Abramson or

---

**5.** To date, Isquith has not identified Strunk's Florida attorney.

**6.** In response to this court's December 15, 1992 Order, Levin and Sklar stated that the Garr Complaint is a copy of the Greenfield Complaint. (Levin Aff. ¶ 3(f), Sklar Aff. ¶ 7.)

**7.** All references to exhibits refer to those exhibits presented during this court's December 10, 1992 hearing on U.S. Healthcare's motion for sanctions.

U.S. Healthcare had done to justify this lawsuit, and he realized that he had a serious conflict of interest.[8] (Ex. M–4.)

After Greenfield realized his mistake, he took immediate steps to have the Greenfield Complaint withdrawn. On November 9, 1992, Greenfield both telephoned and sent a follow up letter to Malone advising him that his son had a business relationship with U.S. Healthcare and that he did "not wish to be a plaintiff in a shareholder's suit against U.S. Healthcare." (Ex. M–3.) Greenfield also requested that Malone do "whatever may be required to discontinue the action brought on my behalf." [9] (Ex. M–3.)

On November 13, 1992, Greenfield telephoned Alan J. Davis ("Davis"), counsel for U.S. Healthcare, and explained that, due to a conflict of interest, he had instructed Malone to withdraw the Greenfield Complaint. (R. at 32–36.) On November 17, 1992, Greenfield again telephoned Davis and reiterated that he did not want to be a party in a case against U.S. Healthcare. (R. at 32–36.) The following day, Greenfield sent a letter to Davis explaining the circumstances surrounding the initiation of the Greenfield Complaint, including the substance of the November 4, 1992 telephone call he received from Malone. (Ex. M–4.) Greenfield further explained that, in an attempt to mitigate any damage caused by the shareholder class action filed in his name, he had severed all ties with Penn Recovery Systems. (Ex. M–4.)

On November 19, 1992, U.S. Healthcare supplemented its original motion for sanctions with information regarding Malone's initiation of this lawsuit and Greenfield's subsequent desire to withdraw due to a conflict of interest. In light of this new information, U.S. Healthcare argues that Malone had a duty to inquire as to whether Greenfield had a conflict of interest before alleging that Greenfield would fairly and adequately protect the interests of the class of shareholders, and that by failing to make such an inquiry, Malone failed to satisfy the "reasonable inquiry" requirement of Rule 11. (Supp.Memorandum at 3–8.) U.S. Healthcare further argues that Malone's failure to adequately inform Greenfield about the basis and allegations of his proposed lawsuit violates the provisions of Rule 1.4 of the Pennsylvania Rules of Professional Conduct, which requires an attorney to "explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation." (Supp.Memorandum at 6.)

In addition, U.S. Healthcare alleges that the law firm of Greenfield & Chimicles had an arrangement with Greenfield whereby Greenfield & Chimicles maintained a list of Greenfield's stockholdings so that Greenfield could be called upon to serve as the named plaintiff in class actions to be filed by Greenfield & Chimicles in the event that one of Greenfield's stocks experienced a downward fluctuation. (Supp.Memorandum at 1.) U.S. Healthcare further alleges:

> [u]ndoubtedly, Greenfield & Chimicles has a stable of such available plaintiffs. These individuals allow Greenfield & Chimicles to bring class actions virtually immediately, thereby enhancing the law firm's chances of being named lead counsel and to garner the lion's share of any eventual settlement.

(Supp.Memorandum at 1.)

U.S. Healthcare argues that in order to be the first to file a class action, the law firm of Greenfield & Chimicles substitutes "all possible speed" for "reasonable inquiry" in violation of Rule 11. (Supp.Memorandum at 1.)

In response to U.S. Healthcare's motion for sanctions, Greenfield & Chimicles, on behalf of Malone, maintains that Malone did indeed conduct a reasonable investigation before filing the Greenfield and Strunk

---

8. On the date this lawsuit was initiated, Greenfield was a director of Penn Recovery Systems, a company founded by his son, Dr. William S. Greenfield. (R. at 28.) At that time, Penn Recovery Systems derived a substantial portion of its income from a contract with U.S. Healthcare. (R. at 27.) Greenfield was concerned about the adverse impact the suit would have on his son's financial well-being. (R. at 28.)

9. Initially, Greenfield & Chimicles refused to withdraw the Greenfield Complaint because it would be "embarrassing" in the face of U.S. Healthcare's motion for sanctions. (R. at 29–30.) However, on November 10, 1992, Greenfield & Chimicles complied with Greenfield's wishes and filed a motion to withdraw his complaint. Greenfield was permitted to withdraw from this action by Order dated December 17, 1992.

Complaints, and that defendants' motion is merely a smokescreen to cover their own wrongdoing. (Response at 2.) As for U.S. Healthcare's allegation regarding Malone's failure to investigate whether Greenfield would fairly and adequately represent the interests of the class, Greenfield & Chimicles argues that Greenfield misled Malone because he failed to disclose his conflict of interest before Malone filed the complaint on his behalf.[10] (Response at 23, n. 20.)

On December 10, 1992, the court held a hearing on U.S. Healthcare's motion for sanctions. During that hearing, Greenfield, after waiving his attorney-client privilege, testified at length about the circumstances surrounding the initiation of the Greenfield Complaint, including the substance and duration of his November 4, 1992 telephone conversation with Malone, and his subsequent attempts to have the Greenfield Complaint withdrawn.[11]

Greenfield also testified that he had previously served as a plaintiff in at least six class actions. (R. at 38.) According to Greenfield, several years ago he was asked by Richard Greenfield, of Greenfield & Chimicles, to supply the firm with a list of his stockholdings, and to update this list from time to time. (R. at 37.) At the time of this request, Greenfield was not a client of Greenfield & Chimicles, nor was this request accompanied by a formal representation letter. (R. at 40.) Periodically, Greenfield would update his list of stocks; however, he never received a formal representation letter unless Greenfield & Chimicles filed suit on his behalf. (R. at 39.) According to Greenfield, of the six securities class actions in which he was represented by Greenfield & Chimicles, only two of these lawsuits were initiated by Greenfield himself, the rest were initiated by the law firm of Greenfield & Chimicles. (R. at 38–39.) This testimony corroborates U.S. Healthcare's allegation that Greenfield & Chimicles maintains a stable of clients that can be quickly pressed into service should the need arise.

Finally, on December 15, 1992, the court entered an Order directing Malone, Isquith, Levin, and Sklar to submit to the court within seven days any and all documentation in support of their claims that they each conducted a reasonable inquiry before filing the Greenfield, Strunk, and Garr Complaints.[12] In response to this Order, on December 22, 1992, Malone and Isquith filed affidavits *in camera* setting forth in detail the investigation made by each attorney. In support of these affidavits, Malone and Isquith submitted *in camera* copies of their investigative files, as well as itemized bills from certain on-line research companies which state the time, date, nature, and duration of the research conducted by each attorney and/or their legal assistants.

---

**10.** Greenfield & Chimicles has not offered any substantive arguments to rebut U.S. Healthcare's allegation regarding the firm's practice of maintaining a list of potential clients. Instead, Greenfield & Chimicles maintains that it has had a long-standing attorney-client relationship with Greenfield, and it has moved to strike U.S. Healthcare's supplemental memorandum in support of its motion for sanctions. Since Robert Greenfield testified without objection to the facts set forth in U.S. Healthcare's supplemental memorandum during the December 10, 1992 hearing, plaintiffs' motion to strike will be denied.

**11.** The court notes that Greenfield & Chimicles tried to dissuade Greenfield from attending this hearing. In a letter to Greenfield dated December 2, 1992, R. Bruce McNew of Greenfield & Chimicles wrote:

> After discussing the [court's scheduled hearing] with the team, we feel that you should not attend the hearing. Your presence at the

hearing might provide the defendants an opportunity to broaden their attack which currently, as far as their Court filings are concerned, have been focused on counsel and not on you or other named plaintiffs.
(Ex. M–1.)
By letter dated December 2, 1992, Greenfield responded:

> I am not your client in this case.... I do not consider that your firm has acted in my interest in pressing forward with the litigation, and in advising me not to attend the hearing ... because the defendants might broaden their attack to include me. It is my intention to be present at the hearing.
(Ex. M–2.)

**12.** Isquith filed an affidavit stating that he engaged in "due deliberation and considerable research," upon which Malone relied when he signed the Strunk Complaint. Thus, the substance of Isquith's investigation is relevant to the court's determination of U.S. Healthcare's motion for sanctions.

On December 22 and 23, 1992, Levin and Sklar filed their own affidavits *in camera*, but without supporting documentation. Levin and Sklar admit that they did not conduct any independent research into the facts and law surrounding the Greenfield Complaint. Instead, Levin and Sklar state that they relied on the research conducted by Malone and the text of the Greenfield Complaint, as well as the facts set forth in the November 4, 1992 *Wall Street Journal* article. (Levin Aff. ¶ 3, Sklar Aff. ¶ 6.) Both attorneys state that based on their "understanding" of the securities laws and the facts as described in the *Wall Street Journal,* they determined that the Greenfield Complaint had merit. (Levin Aff. ¶ 3(f), Sklar Aff. ¶ 6.) Neither attorney believes that their conduct violated the provisions of Rule 11.

## II. DISCUSSION

### A. *Standard for Rule 11*

Federal Rule of Civil Procedure 11 provides, in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

■ An attorney's signature certifies that the attorney has satisfied three duties:

(1) that he has read the documents;

(2) that he has made a reasonable inquiry; and

(3) that he is not acting in bad faith.

*CTC Imports and Exports v. Nigerian Petroleum Corp.,* 951 F.2d 573 (3d Cir. 1991). Each duty is independent; the violation of one triggers Rule 11 sanctions. *Id.* at 578. Moreover, each duty is non-delegable; it is the personal responsibility of the individual signer to perform each duty before he certifies that the pleading satisfies the requirements of Rule 11. *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). As the Supreme Court stated in *Pavelic:*

> The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment.

493 U.S. at 125, 110 S.Ct. at 459.

Thus, if the signing attorney cannot rely upon the inquiry conducted by another member of his firm, he also may not rely solely upon the inquiry conducted by a member of another law firm. *See In re Kunstler,* 914 F.2d 505 (4th Cir.1990), *cert. denied* — U.S. ——, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991).

■ Finally, when determining whether a signing attorney conducted a reasonable pre-filing inquiry, the court must decide what was "reasonable under the circumstances." *Business Guides, Inc. v. Chromatic Communications, Enterprises, Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *see also Napier v. Thirty or More Unidentified Federal Agents, etc.,* 855 F.2d 1080, 1090–91 (3d Cir.1988). In general, the court must consider all of the circumstances, including such factors as:

(1) how much time for investigation was available to the signer;

(2) whether the signer had to rely on a client for information as to the facts underlying the pleading; and

(3) whether the signer depended on forwarding counsel or another member of the bar.

*CTC Imports,* 951 F.2d at 578 (citations omitted).

In this case, U.S. Healthcare argues that plaintiffs' attorneys failed to conduct a reasonable inquiry before filing the Greenfield, Strunk, and Garr Complaints. Therefore, the court will focus its analysis on the

sufficiency of the prefiling inquiry conducted by each of the signing attorneys.

### B. *Malone's Liability Under Rule 11*
#### 1. *The Greenfield Complaint*

■ According to U.S. Healthcare, its motion for Rule 11 sanctions against Malone is based on two grounds: (1) Malone failed to conduct a reasonable inquiry into the facts and/or the merits of the Greenfield Complaint;[13] and (2) Malone failed to conduct a reasonable inquiry into whether Greenfield could fairly and adequately represent the interests of the class (the "class representative allegation"). (R. at 3.)

In response to the first prong of U.S. Healthcare's argument, Malone maintains that after reviewing the November 4, 1992 article in the *Wall Street Journal*, U.S. Healthcare's financial disclosure statements, the company's various filings with the SEC, a series of "on line" analyst reports, newspaper articles reflecting "buy" recommendations issued by securities analysts, and the applicable federal securities laws, he concluded that there was a sufficient basis to file a class action against U.S. Healthcare. After reviewing the documentation submitted by Malone to support this allegation, the court concludes that Malone's inquiry regarding the accuracy of the information set forth in the *Wall Street Journal* was reasonable under the circumstances.

■ In response to the second prong of U.S. Healthcare's argument, Malone argues that he had no reason to know that Greenfield had a potential conflict of interest, and that it was Greenfield's duty to alert Malone of this fact before he authorized Malone to file suit on his behalf. Malone's argument, however, is misguided. Under Rule 11, the signer's duty to conduct a reasonable inquiry is not delegable, nor is it lessened by a client's duty to disclose all relevant information. As the attorney signing the complaint, it was Malone's duty to inquire into whether Greenfield had any potential conflicts of interest which would interfere with his ability to "fairly and adequately protect the interests of the Class," as alleged in paragraph 13.

Under Fed.R.Civ.P. 23, one of the prerequisites to a class action is that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Since the absent members of the class will be conclusively bound by results obtained by the class representative and his attorneys, the representative party acts a fiduciary for the class. *Scott v. University of Delaware*, 601 F.2d 76 (3d Cir.1979), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *see also* 7A Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 2d, § 1765 (1992). As a result, adequate representation, in addition to being required by Rule 23, is constitutionally mandated by due process requirements. *Scott*, 601 F.2d at 85 (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

In *Wetzel v. Liberty Mutual Life Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), the Third Circuit stated that adequate class representation under Fed.R.Civ.P. 23(a)(4) depends on two factors:

(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and

(2) the plaintiff must not have any interests antagonistic to those of the class.

*Wetzel*, 508 F.2d at 247.

In this case, Malone never made any inquiry into whether Greenfield could adequately protect the interests of the class, nor whether Greenfield had any interests antagonistic to those of the class. In light of the seriousness of the allegation that Greenfield would fairly and adequately protect the interests of the class, the court finds that Malone's failure to inquire into the truth of this allegation was unreason-

---

**13.** As a preliminary matter, in imposing Rule 11 sanctions, the court should not pass judgment on the merits of an action. *CTC Imports*, 951 F.2d at 579. In its motion for Rule 11 sanctions, U.S. Healthcare attached a number of exhibits in the form of analyst reports to support its argument that plaintiffs' class action should fail on the merits. During the December 10, 1992 hearing, the court stated that it would be improper to consider the merits of this action at that time, and the court declines to do so here as well.

able under the circumstances and a violation of Rule 11.[14]

### 2. The Strunk Complaint

In paragraph 13 of the Strunk Complaint, Malone alleges that Strunk will "fairly and adequately protect the interests of the Class." Given Malone's failure to conduct any inquiry into the truth of this allegation with regard to Greenfield, it would not be unreasonable to conclude that Malone failed to conduct the same inquiry with regard to Strunk. Nevertheless, at this time, there is insufficient evidence in the record to make such a determination, and the court is unable and therefore unwilling to address this. If, at some later date, evidence obtained through discovery suggests that Malone failed to conduct a reasonable inquiry into the truth of this allegation, the court may revisit this issue and, if necessary, appropriate sanctions will be imposed at that time.[15]

### C. Levin and Sklar's Liability Under Rule 11

■ In its motion for sanctions, U.S. Healthcare argues that Levin and Sklar's mere copying of the Greenfield Complaint by itself constitutes a violation of Rule 11. (Supp.Memorandum at 7.) U.S. Healthcare also argues that had Levin and Sklar taken the time to conduct an adequate inquiry into the circumstances surrounding the development of the Greenfield Complaint, Levin and Sklar would have discovered that the Greenfield Complaint was flawed, and

they would not have copied it. (Supp.Memorandum at 7.)

In response to U.S. Healthcare's motion, Sklar states that he relied on the allegations of the Greenfield Complaint, the *Wall Street Journal* article, and the experience of Levin, before filing the Garr Complaint. (Sklar Aff. ¶ 4–7.) Levin states that, based on his understanding of the Third Circuit opinion in *Lewis v. Curtis*, 671 F.2d 779 (3d Cir.1982), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982), and the Advisory Committee Notes to Rule 11 (regarding reliance on another member of the bar), his "investigation" satisfies the requirements of Rule 11. (Levin Aff. ¶ 4.) Both attorneys are incorrect.

In *Lewis*, the Third Circuit held that reliance on information printed in the *Wall Street Journal* was sufficient to satisfy the certification requirement of Fed. R.Civ.P. 23.1. *Lewis*, 671 F.2d at 788. The *Lewis* Court stated that, for the purposes of Rule 23.1:

> [r]eliance on an article in *The Wall Street Journal* [sic] is not reliance on an insubstantial or meaningless investigation. Plaintiffs and their attorneys need not make further expenditures to prove independently that which may be read with some confidence of truthfulness and accuracy in a respected financial journal.

*Id.*

Since 1982, however, the Third Circuit has not applied its holding in *Lewis* to the

---

**14.** It is apparent that Malone was not acting alone in his rush to the courthouse. At the very least, his conduct also can be imputed to other members of Greenfield & Chimicles. At present, however, Rule 11 sanctions can be imposed only upon the individual signer, and not his law firm. *Pavelic*, 493 U.S. at 125, 110 S.Ct. at 459. Consequently, Malone must bear the brunt of these sanctions on behalf of himself and Greenfield & Chimicles. It should be noted, however, that the Judicial Conference of the United States at its September 22, 1992 meeting approved proposed changes to a number of the Federal Rules of Civil Procedure, including Rule 11. These proposed changes were delivered to the United States Supreme Court in November 1992, and they are now before the Supreme Court for review. If the Supreme Court approves these changes and submits them to Congress by May 1993, they will take effect in December 1993, unless Congress modifies or

otherwise blocks their imposition. Under the proposed changes to Rule 11, sanctions may be imposed upon the "attorneys, law firms, or parties that have violated [Rule 11] or are responsible for the violation." *See* Rule 11(c), *Proposed Amendments to the Federal Rules of Civil Procedure*, Judicial Conference of the United States (1992).

**15.** In this court's December 15, 1992 Order, Malone and Isquith were ordered to submit "any and all documentation in support of their claims that they each conducted a reasonable pre-filing inquiry into the facts and law alleged in the [Greenfield and Strunk Complaints]." However, the documentation submitted by Malone and Isquith in response to this Order does not address the class representative allegations. The court notes that Malone and Isquith's obligation to fully comply with this Order is continuing.

certification requirement of Rule 11.[16] Although information transmitted by the media may have some inherent truthfulness, and publications such as the *Wall Street Journal* are well-respected for their accuracy, Rule 11 conveys a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and law which form the basis of a pleading or motion. *See Pavelic*, 493 U.S. at 125–127, 110 S.Ct. at 459–460. In light of the Supreme Court's ruling in *Pavelic*, if the signing attorney cannot rely on the analysis of a trusted member of his law firm to have ascertained the facts, he certainly cannot rely *solely* on the analysis of a staff reporter for the *Wall Street Journal* to have done the same. Given the tremendous advances in computer-assisted legal research since 1982, as well as the broadening, and proposed broadening, of Rule 11 since 1983,[17] the court believes at this time that reliance across the board on a *Wall Street Journal* article alone, without some form of independent inquiry, is insufficient to satisfy the requirements of Rule 11. In some instances, the source and content of an article may increase or lessen the extent to which other independent inquiry may be necessary, and such inquiry may be increased or lessened by the availability of more reliable facts. In this case, however, the circumstances plainly show that the November 4, 1992 *Wall Street Journal* article itself was not a sufficient substitute for further inquiry.[18]

Levin also argues that his "reliance on the integrity of the pre-filing investigation of the Greenfield & Chimicles office" is permissible under Rule 11. Levin is incorrect. Given the Supreme Court's holding in *Pavelic*, Levin cannot simply delegate to Greenfield & Chimicles his duty of reasonable inquiry. *See Pavelic*, 493 U.S. at 125, 110 S.Ct. at 459; *In re Kunstler*, 914 F.2d at 514. For the same reason, Sklar's piggybacking on Levin's reliance on Greenfield & Chimicles is in violation of Rule 11.[19] *Id.* Under the circumstances, the court can only conclude that Levin and Sklar sought to act more quickly than fulfilling their duty would have allowed. As a result, the court finds that Levin and Sklar's inquiry, or lack thereof, was unrea-

**16.** *But cf. In re Ramada Inns Secur. Litigation,* 550 F.Supp. 1127, 1134–35 (D.Del.1982) (Stapleton, J.) (plaintiffs' attorneys' reliance on information from *Wall Street Journal* to support claims satisfies their obligations under Rule 11).

**17.** In 1982, Rule 11 required an attorney to certify that "to the best of his knowledge, information, and belief there is good ground to support" a pleading or motion. *See* 5A Wright & Miller, *Federal Practice & Procedure,* Civil 2d, § 1334 (1990). In 1983, however, Rule 11 was amended and the nature of the certification requirement was expanded significantly by the addition of the "reasonable inquiry" requirement. *Id.* Now, by signing a pleading, an attorney certifies that he has concluded after a reasonable inquiry into both the facts and the law, that "to the best of his knowledge, information, and belief," there are good grounds to support the pleading or motion. *Id.* at §§ 1334, 1335. Moreover, under the proposed amendments to Rule 11; *see supra* note 14:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have eviden-

tiary support after a reasonable opportunity for further investigation or discovery....

*See* Rule 11(b)(3), *Proposed Amendments to the Federal Rules of Civil Procedure,* Judicial Conference of the United States (1992).

**18.** Assume for example that a *Wall Street Journal* article recites verbatim from the *Congressional Record* facts presented to a congressional committee, under oath, from an audit conducted by the General Accounting Office concerning fraud by government contractors. This sort of information obtained from the *Wall Street Journal* would require less corroboration than the reporting of the same suspicions that had as its source merely rumors on Wall Street or an undisclosed tip.

**19.** Furthermore, in his affidavit submitted *in camera* to the court, Malone reveals that only one of the twenty six paragraphs containing allegations in the Greenfield Complaint was based solely on information obtained from the November 4, 1992 *Wall Street Journal* article. The remaining allegations were based on a variety of sources, none of which were reviewed by Levin or Sklar. Without reviewing the basis for these allegations, Levin and Sklar could not possibly certify that these allegations were well-grounded in both fact and law.

sonable under the circumstances and a violation of Rule 11.

### D. Violations of the Rules of Professional Conduct

■ Rule 1.4 of the Pennsylvania Rules of Professional Conduct states, in pertinent part:

(b) A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

In this case, Malone concedes that he never explained to Greenfield the basis of his proposed complaint, nor did he explain the allegations he intended to make against U.S. Healthcare and Leonard Abramson. Moreover, Malone concedes that he never sent Greenfield a copy of his proposed complaint, or even a representation letter, until after the Greenfield Complaint was filed. Without this basic information, Greenfield could not possibly have made an informed decision about the scope of Malone's proposed representation. As a result, the court believes that there is a strong basis to conclude that Malone's conduct was in violation of Rule 1.4(b).

Furthermore, after carefully considering the evidence, the court finds that Malone's November 4, 1992 telephone call to Greenfield was intended only to fulfill the requirement that some shareholder, indeed any shareholder, be named as plaintiff in a class action to be brought as quickly as possible against U.S. Healthcare; and that Malone, and his law firm, simply used Greenfield as the means to be the first to file such a lawsuit. In the rush to be the first to file a class action against U.S. Healthcare, with the probable expectation of being named lead counsel to represent the class and thus obtaining the major share of any fees, Malone put his pecuniary interests above that of his client and compromised his corresponding ethical obligations. The desire to be first got in the way of professional judgment.

The court is troubled by the fact that Greenfield & Chimicles apparently initiates lawsuits by creating plaintiffs. There is strong evidence to suggest that Greenfield & Chimicles maintains a list of potential clients to be pressed into service at the drop of certain stock prices. Although this practice may not be illegal, it certainly raises questions about the ethical standards applied by the attorneys practicing at this firm.

Since this court has adopted the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, when misconduct or allegations of misconduct come to the attention of a Judge of this court, it is customary for the Judge to refer the matter to the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board") for investigation and, if necessary, for the prosecution of a formal disciplinary proceeding. See Local Rule 14, Rule V(A), Rules of Disciplinary Enforcement. Therefore, this matter will be referred to the Disciplinary Board for further investigation into whether the conduct of plaintiffs' attorneys set forth in this Memorandum, or developed from the facts, constitutes a violation of the Pennsylvania Rules of Professional Conduct, and, if so, for the prosecution of formal disciplinary proceedings.

### III. CONCLUSION

For the foregoing reasons, the court finds that attorneys Malone, Levin, and Sklar, violated the certification requirements of Fed.R.Civ.P. 11. Therefore, each attorney will be sanctioned in the manner set forth in the attached Order.

In addition, the court finds that there is sufficient basis to suggest that the conduct of plaintiffs' attorneys may constitute a violation of the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. As a result, this matter will be referred to the Disciplinary Board for further investigation, and, if necessary, appropriate disciplinary proceedings.

### ORDER

AND NOW, TO WIT, this 4th day of February, 1993, upon consideration of de-

fendants U.S. Healthcare, Inc. and Leonard Abramson's motion for sanctions against James R. Malone, Jr., Esquire, Arnold Levin, Esquire, and Harris J. Sklar, Esquire, pursuant to Fed.R.Civ.P. 11, and the responses thereto, IT IS ORDERED that said motion is *granted.*

IT IS FURTHER ORDERED as follows:

(1) Attorneys Malone, Levin, and Sklar shall pay on a basis allocated to the civil action they initiated all reasonable costs and attorneys' fees incurred to date, or to the extent necessary hereafter, by defendants U.S. Healthcare, Inc. and Leonard Abramson in connection with this matter;

(2) Counsel for defendants U.S. Healthcare and Leonard Abramson shall file with the court within ten (10) days an affidavit setting forth in detail all reasonable costs and attorneys' fees allocated between the civil actions which defendants have incurred to date, or expect to incur hereafter, in connection with Civil Action Nos. 92–6345 and 92–6412;

(3) Civil Action Nos. 92–6345 and 92–6412 are *dismissed without prejudice;*

(4) Pursuant to Local Rule 14, this matter will be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for an investigation into whether the conduct of plaintiffs' attorneys as set forth in the attached Memorandum, or developed hereafter from the facts, constitutes a violation of the Pennsylvania Rules of Professional Conduct, and, if so, for the prosecution of formal disciplinary proceedings; and

(5) Plaintiffs' motion to strike defendants' supplemental memorandum in support of their motion for sanctions is *denied.*